**THE CASE IS SCHEDULED FOR ORAL ARGUMENT ON JANUARY 14, 2025**

No. 23-5244

# United States Court of Appeals for the District of Columbia Circuit

---

GARY SEBASTIAN BROWN, III

*Appellant,*

v.

FEDERAL BUREAU OF INVESTIGATION

*Appellee.*

---

Appeal from the United States District Court for the District of Columbia, No. 1:21-cv-01639

---

**BRIEF FOR COURT-APPOINTED *AMICUS CURIAE* JOSHUA M. WESNESKI IN SUPPORT OF APPELLANT**

---

Chloe S. Fife
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000

Zachary D. Tripp
Joshua M. Wesneski
   *Counsel of Record &*
   *Court-Appointed Amicus Curiae*
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
(202) 682-7000
joshua.wesneski@weil.com

*Counsel for Court-Appointed Amicus Curiae*

## CERTIFICATE AS TO
## PARTIES, RULINGS, AND RELATED CASES

### I.  Parties and *Amici*

Gary Sebastian Brown, III was the plaintiff before the district court and is the appellant before this Court.

The Federal Bureau of Investigation was the defendant before the district court and is the appellee before this Court.

There were no *amici curiae* or intervenors before the district court. Joshua M. Wesneski is Court-appointed *amicus curiae* before this Court.

### II.  Rulings Under Review

The ruling under review is Honorable Reggie B. Walton's August 18, 2023 Memorandum Opinion and Order (i) granting the Federal Bureau of Investigation's motion for summary judgment; (ii) granting Brown's motion to amend/supplement his opposition to summary judgment; and (ii) denying as moot Brown's motion for a CM/ECF password. JA459–97. The Memorandum Opinion is unpublished but is available on Westlaw. *Brown v. FBI*, No. 1:21-CV-01639, 2023 WL 5333210 (D.D.C. Aug. 18, 2023).

### III.  Related Cases

*Amicus curiae* is unaware of any related cases involving substantially the same parties and the same or similar issues.

# TABLE OF CONTENTS

Introduction ......................................................................................... 1

Statement of Issues............................................................................. 2

Statement of the Case ....................................................................... 4

    A.  Statutory Background ................................................... 4

    B.  Factual and Procedural History ................................... 7

        1.  The FOIA Request ................................................ 7

        2.  Summary Judgment Proceedings ......................... 9

        3.  Post-Judgment Proceedings.................................. 13

Jurisdiction ...................................................................................... 15

Summary of Argument..................................................................... 15

Standard of Review.......................................................................... 17

Argument .......................................................................................... 18

I.  The FBI's Search Was Not Adequate Because It Was Limited to Witness "Interviews" ................................................................. 18

    A.  Agencies Must Liberally Construe FOIA Requests ................. 19

    B.  The FBI's Construction of Brown's Request Is Arbitrarily and Unlawfully Narrow .............................................................. 20

II.  The District Court Erred by Failing to Consider the Foreseeable-Harm Requirement ...................................................... 26

    A.  The District Court Failed to Examine the Foreseeable-Harm Requirement ............................................................................. 27

    B.  The FBI Has Not Demonstrated That Releasing Information Subject to Exemption 7(D) Would Cause Foreseeable Harm ........................................................................ 34

Conclusion........................................................................................ 43

Certificate of Compliance ............................................................... 44

# TABLE OF AUTHORITIES

**Cases**                                                    **Page(s)**

*Aguiar v. DEA,*
   865 F.3d 730 (D.C. Cir. 2017) ................................................ 17

*Am. Civil Liberties Union v. Dep't of Homeland Sec.,*
   No. 20-CV-3204, 2023 WL 2733721 (D.D.C. Mar. 31, 2023) .............. 19

*Charles v. Office of Armed Forces Med. Exam'r,*
   730 F. Supp. 2d 205 (D.D.C. 2013) ...................................... 24, 25, 26, 33

*Chiquita Brands Int'l Inc. v. SEC,*
   805 F.3d 289 (D.C. Cir. 2015) ................................................ 5

*Conn. Nat'l Bank v. Germain,*
   503 U.S. 249 (1992) ................................................ 38

*Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.,*
   436 F. Supp. 3d 90 (D.D.C. 2019) ...................................... 27, 28, 37, 41

*Dalal v. U.S. Dep't of Just.,*
   643 F. Supp. 3d 33 (D.D.C. 2022) ................................................ 41

*Ecological Rights Found. v. EPA,*
   541 F. Supp. 3d 34 (D.D.C. 2021) ................................................ 37

*EPA v. Mink,*
   410 U.S. 73 (1973), *superseded on other grounds by* Pub. L. No.
   93-502, 88 Stat. 1561 (1974) ................................................ 4

*Friends of Blackwater v. U.S. Dep't of Interior,*
   391 F. Supp. 2d 115 (D.D.C. 2005) ................................................ 30

*Friends of the River v. U.S. Army Corps of Eng'rs,*
   No. 16-CV-2327, 2023 WL 4105168 (D.D.C. June 21, 2023) .............. 31

*Gross v. FBL Fin. Servs., Inc.,*
   557 U.S. 167 (2009) ................................................ 21

*Hemenway v. Hughes,*
   601 F. Supp. 1002 (D.D.C. 1985) ................................................ 24

*Ho v. Garland,*
    106 F.4th 47 (D.C. Cir. 2024) ................................................ 34

*Inst. for Justice v. IRS,*
    941 F.3d 567 (D.C. Cir. 2019) ............................................. 19

*Jud. Watch, Inc. v. U.S. Dep't of Com.,*
    375 F. Supp. 3d 93 (D.D.C. 2019) ......................................... 31

*LaCedra v. Exec. Office for U.S. Attys.,*
    317 F.3d 345 (D.C. Cir. 2003) ............................................. 20

*Larson v. Dep't of State,*
    565 F.3d 857 (D.C. Cir. 2009) ............................................. 18

*Leopold v. Dep't of Justice,*
    94 F.4th 33 (D.C. Cir. 2024) ...................................18, 29, 30, 33, 36, 37

*Louise Trauma Ctr. LLC v. U.S. Dep't of Homeland Sec.,*
    No. 20-CV-1128, 2022 WL 1081097 (D.D.C. Apr. 11, 2022) ............... 31

*McGehee v. CIA,*
    697 F.2d 1095 (D.C. Cir. 1983) ............................................ 25

*Miller v. Casey,*
    730 F.2d 773 (D.C. Cir. 1984) ............................................. 20

*Moeller v. Equal Emp't Opportunity Comm'n,*
    No. 19-CV-2230, 2021 WL 1025815 (D.D.C. Mar. 17, 2021) ......... 32, 41

*Montgomery v. IRS,*
    292 F. Supp. 3d 391 (D.D.C. 2018) ......................................... 5

*Morley v. CIA,*
    508 F.3d 1108 (D.C. Cir. 2007) ............................................ 17

*Murphy v. Exec. Office for U.S. Attys.,*
    789 F.3d 204 (D.C. Cir. 2015) ............................................. 27

*Nat'l Pub. Radio, Inc. v. U.S. Dep't of Homeland Sec.,*
    No. 20-CV-2468, 2022 WL 4534730 (D.D.C. Sep. 28, 2022) ............... 40

*Nat'l Sec. Counselors v. CIA,*
  931 F. Supp. 2d 77 (D.D.C. 2013) ................................................... 21, 24

*Nation Mag., Wash. Bureau v. U.S. Customs Serv.,*
  71 F.3d 885 (D.C. Cir. 1995) ................................................ 20

*New Orleans Workers' Center for Racial Justice v. U.S.*
  *Immigration & Customs Enforcement,*
  373 F. Supp. 3d 16 (D.D.C. 2019) ........................................ 20

*Nicholls v. U.S. Office of Personnel Mgmt.,*
  863 F. Supp. 2d 4 (D.D.C. 2012) ......................................... 26

*Oglesby v. U.S. Dep't of Army,*
  920 F.2d 57 (D.C. Cir. 1990) ............................................... 26

*Ortiz v. Dep't of Health and Human Servs.,*
  70 F.3d 729 (2d Cir. 1995) ................................................... 36

*Perry v. Block,*
  684 F.2d 121 (D.C. Cir. 1982) .............................................. 25

*Reps. Comm. for Freedom of the Press v. FBI,*
  3 F.4th 350 (D.C. Cir. 2021) ........................ 17, 27, 28, 29, 35, 38, 39, 40

*Reps. Comm. for Freedom of the Press v. U.S. Customs & Border*
  *Prot.,*
  567 F. Supp. 3d 97 (D.D.C. 2021) .............................................. 32, 39, 40

*Republic of Sudan v. Harrison,*
  587 U.S. 1 (2019) ................................................................. 21

*Savage v. U.S. Dep't of Justice,*
  No. 22-CV-2477, 2024 WL 2880438 (D.D.C. June 7, 2024) ................ 41

*Shaw v. FBI,*
  749 F.2d 58 (D.C. Cir. 1984) ............................................... 35

*Shteynlyuger v. Ctrs. for Medicare & Medicaid Servs.,*
  698 F. Supp. 3d 82 (D.D.C. Sep. 30, 2023) ................................. 32, 37, 38

*Truitt v. Dep't of State*,
  897 F.2d 540 (D.C. Cir. 1990) .......................................................... 19, 20

*United States v. Olano*,
  507 U.S. 725 (1993) .......................................................................... 33

*Valencia-Lucena v. U.S. Coast Guard*,
  180 F.3d 321 (D.C. Cir. 1999) ............................................................ 19

*Wallick v. Agricultural Marketing Service*,
  281 F. Supp. 3d 56 (D.D.C. 2017) ...................................................... 20

*Wash. Post Co. v. Special Inspector Gen. for Afghanistan Reconstr.*,
  No. 18-CV-2622, 2021 WL 4502106 (D.D.C. Sept. 30, 2021) ... 30, 33, 37

*Weisberg v. U.S. Dep't of Justice*,
  705 F.2d 1344 (D.C. Cir. 1983) .......................................................... 25

**Statutes & Regulations**

5 U.S.C. § 552(a) ................................................ 5, 6, 7, 12, 19, 29, 36, 38

5 U.S.C. § 552(b) ........................................................ 5, 6, 7, 8, 35

28 U.S.C. § 1291 .................................................................... 15

28 U.S.C. § 1331 .................................................................... 15

**Other Authorities**

162 Cong. Rec. H3717 (2016) .................................................. 28

*Account*, Merriam-Webster's Dictionary .................................. 22

*Account*, Oxford English Dictionary .......................................... 22

FOIA Improvement Act of 2016, Pub. L. No. 114-185, 130 Stat. 538 ........ 6

H.R. Rep. No. 114-391 (2016) .................................................. 18

*Interview,* Merriam-Webster's Dictionary .................................. 21

*Interview*, Oxford English Dictionary ........................................ 21

*Narrate,* Merriam-Webster's Dictionary ................................................ 22

*Narrative,* Merriam-Webster's Dictionary ............................................ 22

*Narrative,* Oxford English Dictionary ................................................. 22

S. Rep. No. 93-854 (1974) ................................................................... 19

S. Rep. No. 114-4 (2015) .............................................................. 27, 36

*State,* Merriam-Webster's Dictionary .................................................. 22

*State,* Oxford English Dictionary ....................................................... 22

*Statement,* Merriam-Webster's Dictionary .......................................... 21

*Statement,* Oxford English Dictionary ................................................ 22

## GLOSSARY

Brown ....................................................................Gary Sebastian Brown, III

FBI.............................................................Federal Bureau of Investigation

FOIA...................................................................Freedom of Information Act

## INTRODUCTION

Plaintiff-Appellant Gary Brown, III ("Brown") submitted a request to the Federal Bureau of Investigation ("FBI") pursuant to the Freedom of Information Act ("FOIA") seeking "accounts, narratives, or statements" from witnesses to a shooting in San Bernardino, California in 2015. Following the conclusion of the FBI's investigation into the incident, the FBI produced responsive documents. In doing so, however, it committed two legal errors: (1) it construed Brown's request to seek only witness "interviews," even though Brown's request does not use that term and seeks a broader set of documents, and (2) it failed to adequately assess whether disclosure of the information sought by Brown—witness accounts and descriptions of the shooters—would foreseeably result in harm.

The district court below granted summary judgment to the FBI notwithstanding those two errors. As to the first, it erroneously held that the FBI's narrow construction of Brown's request was reasonable and faulted Brown for failing to identify specific records excluded from the FBI's search. As to the second, the district court failed to analyze the issue of foreseeable harm at all, even though it is a statutory element that must be considered in nearly all circumstances before the government may withhold a responsive document.

These errors require vacatur and reversal. Congress and this Court have repeatedly admonished agencies for taking an unduly narrow view of FOIA requests. There is no plain-English understanding of the phrase "accounts, narratives, or statements" that would limit responsive documents to "interviews." Additionally, this Court has been clear that since amendments to FOIA in 2016, each agency (and district court) has an obligation to independently assess the threat of foreseeable harm from disclosure of a document before withholding that document, regardless of whether a statutory exemption to disclosure would otherwise allow the agency to withhold the document. Both the FBI and the district court failed to undertake that examination as to any class of documents, an error that is particularly prejudicial with respect to the agency's invocation of an exemption for all information provided under an implied assurance of confidentiality (Exemption 7(D)).

The district court's grant of summary judgment should be vacated and reversed, and the case remanded for further proceedings.

## STATEMENT OF ISSUES

The issues presented are:

1. Whether the FBI properly construed Brown's request for "accounts, narratives, or statements" to seek only "interviews"; and

2.   Whether the FBI satisfied its burden of demonstrating that disclosure of materials withheld under FOIA's exemptions would foreseeably harm an interest protected by those exemptions.

## STATUTES AND REGULATIONS

The relevant provisions of FOIA are excerpted below:

(a) Each agency shall make available to the public information as follows:

. . .

   (3)

      (A) . . . each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and the procedures to be followed, shall make the records promptly available to any person.

. . .

   (8)

      (A) An agency shall—

        (i) withhold information under this section only if—

          (I) the agency reasonably foresees that disclosure would harm an interest protected by an exemption described in subsection (b); or

          (II) disclosure is prohibited by law; and

        (ii)

          (I) consider whether partial disclosure of information is possible whenever the agency determines that a full disclosure of a requested record is not possible; and

(II) take reasonable steps necessary to segregate and release nonexempt information . . . .

. . .

(b) This section does not apply to matters that are—

. . .

(7) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source . . . .

5 U.S.C. § 552.

## STATEMENT OF THE CASE

### A. Statutory Background

FOIA was passed in 1966 to "permit access to official information long shielded unnecessarily from public view and attempts to create a judicially enforceable public right to secure such information from possibly unwilling official hands." *EPA v. Mink*, 410 U.S. 73, 80 (1973), *superseded on other grounds by* Pub. L. No. 93-502, 88 Stat. 1561 (1974). The statute requires each executive agency to make available to the public a variety of records and to provide additional records upon request from a member of

the public.  5 U.S.C. § 552(a).  The requester's "identity or motive" are irrelevant an agency's obligation to produce responsive documents. *Chiquita Brands Int'l Inc. v. SEC*, 805 F.3d 289, 294 (D.C. Cir. 2015); *see also Montgomery v. IRS*, 292 F. Supp. 3d 391, 396 (D.D.C. 2018) ("[A] requester's motive is irrelevant to the ultimate inquiry in a FOIA case: whether the agency properly withheld records.").

Agencies can withhold responsive documents only if those documents qualify under one of several exemptions, codified in Section 552(b).  As a few examples, disclosure generally is not required if the materials are "related solely to the internal personnel rules and practices of an agency," *id.* § 552(b)(2), are "trade secrets and commercial or financial information obtained from a person and privileged or confidential," *id.* § 552(b)(4), or are "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy," *id.* § 552(b)(6).

Most relevant here is Exemption 7(D), which provides (in relevant part and reformatted for clarity) that materials are exempt if they comprise:

> Records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information
>
> . . .

5

(D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source . . . .

5 U.S.C. § 552(b)(7).

Prior to 2016, an agency could withhold documents from disclosure if those documents fell within any of the enumerated exemptions. In 2016, however, Congress amended FOIA through the FOIA Improvement Act of 2016, Pub. L. No. 114-185, 130 Stat. 538. Among other changes, the Act added Section 552(a)(8)(A), which provides:

An agency shall—

(i) withhold information under this section only if—

(I) the agency reasonably foresees that disclosure would harm an interest protected by an exemption described in subsection (b); or

(II) disclosure is prohibited by law . . . .

As a consequence, an agency generally may withhold a responsive document only if it determines *both* that a document satisfies the elements for

an exemption *and* disclosure would result in foreseeable harm or is pro-

hibited by law.[1]

## B. Factual and Procedural History

### 1. The FOIA Request

On November 7, 2019, Brown submitted a FOIA request to the FBI

seeking:

> any witness accounts, narratives, or statements provided by wit-
> nesses from an incident which occurred on December 2nd, 2015
> at the Inland Regional Center in San Bernardino, CA. This was
> a high profile massacre involving some 14 dead and 22 injured,
> allegedly committed by Tashfeen Malik and Syed Farook. Spe-
> cifically, I am seeking accounts, narratives, and statements from
> witnesses who were located in the conference room where the at-
> tack mainly took place. Of particular importance to this re-
> quester are any descriptions of the perpetrators such as, the
> number of attackers, their behavior, apparel, equipment, and
> any other details regarding their appearance.

JA460; JA55–56; JA97–98. On November 25, 2019, the FBI provided 19

pages of previously-released records to Brown, advising Brown that he

could request an additional search for records if he was unsatisfied.

JA460; JA56; JA100–03. On December 12, 2019, Brown requested that

the FBI conduct an additional search. JA460; JA56; JA105. The FBI

---

[1] This requirement does not apply to documents qualifying for an exemp-
tion under 5 U.S.C. § 552(b)(3), relating to documents specifically exempt
from disclosure by statute. *See* 5 U.S.C. § 552(a)(8)(B).

acknowledged Brown's request on January 3, 2020. JA460–61; JA56–57; JA107–08.

On February 26, 2020, the FBI advised Brown that the material he requested was exempt from disclosure pursuant to 5 U.S.C. § 552(b)(7)(A), because it concerned a pending or prospective law enforcement proceeding and disclosure could interfere with that proceeding. JA461; JA57; JA110–13. Brown apparently never received this letter, because he followed up on his FOIA request on July 15, 2020, seeking an update. JA461; JA57; JA115–18. On July 29, the FBI resent its February 26 letter. JA461; JA57; JA120.

Pursuant to 5 U.S.C. § 552(b)(7)(A), Brown filed a timely appeal from the FBI's decision. JA461; JA57; JA122–27. The Department of Justice's Office of Information Policy affirmed the FBI's decision on December 1, 2020. JA461; JA57; JA129; JA131–32. Brown filed this case on June 16, 2021, challenging that determination. JA8–JA14.

In May 2022, the FBI reevaluated Brown's FOIA request and determined that the law enforcement proceeding invoked to justify withholding pursuant to Section 552(b)(7)(A) was no longer pending. JA461; JA57. Accordingly, on July 29, 2022, the FBI made a second and final production of

8

documents to Brown, releasing 406 partially redacted pages and withholding 5 pages in full on the basis of various FOIA exemptions.  JA461–62; JA58; JA134–37.

### 2. Summary Judgment Proceedings

In litigation, the FBI disclosed for the first time the scope of its search for records responsive to Brown's FOIA request.  In particular, the FBI attested that it had searched through the FBI's Central Records System ("CRS")—the FBI's records system holding applicant, investigative, intelligence, personnel, administrative, and general files—using Sentinel, the FBI's case management program. JA58–61.  The FBI searched for records using the search term "Inland Regional Center."  JA61–62.  It then reviewed the resulting records for responsiveness to Brown's FOIA request. JA61–62.

In reviewing these records for responsiveness, however, the FBI did not search for all documents reflecting "witness accounts, narratives, or statements provided by witnesses," as requested by Brown.  JA97; *see also* JA63.  Instead, the FBI "narrowed the results to witness interviews." JA63.  The entirety of the responsive records produced by the FBI consist of these witness interviews, with no other witness accounts, narratives, or statements.  *See generally* JA200–432.

The FBI also explained its withholding and/or redaction of certain documents, invoking the following FOIA exemptions:

| FOIA Exemption (5 U.S.C. § 552) | Description |
|---|---|
| (b)(1) ("Exemption 1") | documents "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and [] are in fact properly classified pursuant to such Executive order" |
| (b)(3) ("Exemption 3-1") | documents "specifically exempted from disclosure by statute . . . if that statute . . . requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue" |
| (b)(6) ("Exemption 6") | "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy" |
| (b)(7)(A) ("Exemption 7(A)") | "records or information compiled for law enforcement purposes" that "could reasonably be expected to interfere with enforcement proceedings" |
| (b)(7)(C) ("Exemption 7(C)") | "records or information compiled for law enforcement purposes" that "could reasonably be expected to constitute an unwarranted invasion of personal privacy" |
| (b)(7)(D) ("Exemption 7(D)") | "records or information compiled for law enforcement purposes" that "could reasonably be expected to disclose the identity of a confidential source . . . and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source" |

| FOIA Exemption (5 U.S.C. § 552) | Description |
|---|---|
| (b)(7)(E) ("Exemption 7(E)") | "records or information compiled for law enforcement purposes" that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law" |

The FBI moved for summary judgment, and the district court granted that motion on August 18, 2023. JA460. Relevant here are two parts of the court's opinion.

*First*, the district court held that the FBI conducted an adequate search for documents, even though it narrowed its responsiveness review to produce only "witness interviews," and not any other witness statements or accounts. JA463. The court focused primarily on the reasonableness of the FBI's search methods—applying keywords to CRS via Sentinel—and offered little examination of how the FBI could reasonably read Brown's FOIA request to seek *only* witness interviews. JA463–69. The district court did not undertake any plain-meaning interpretation of Brown's FOIA request, and instead asserted simply that Brown's "own preferences and suppositions cannot dictate the reasonableness of the scope of the FBI's search." JA466–67.

*Second*, the district court upheld all of the FBI's invocations of FOIA exemptions to withhold or redact documents. JA470–95. With respect to Exemption 7(D), the district court concluded that it was reasonable to infer that witnesses spoke to the FBI under an implied assurance of confidentiality, as is required to invoke the exemption. JA486–89. The court concluded from there that witnesses' descriptions of the shooters were properly redacted—notwithstanding the inability of any third-party observer to link a description of a shooter with the witness who supplied that description—because "the availability of Exemption 7(D) depends not upon the factual contents of the document sought, but upon whether the source was confidential and the information was compiled during a criminal investigation." JA489 (citations omitted). "[T]he content at issue," the court averred, "is irrelevant to the analysis of the propriety of the withholdings under Exemption 7(D)." JA490.

With respect to Exemption 7(D) and all other exemptions, the district court did not address whether the FBI had established that any (much less all) redactions complied with Section 552(a)(8)(A)(i)'s requirement that records be withheld only if either "(I) the agency reasonably foresees that disclosure would harm an interest protected by an exemption described in subsection (b)" or "(II) disclosure is prohibited by law." That presumably is because the FBI provided little-to-no evidence or argument

12

on this requirement. The FBI's supporting declaration attested simply that the FBI withheld documents only if the agency foresaw that "foreseeable harm would result from disclosure of the record," and that "[t]he FBI's foreseeable harm is more fully described within each . . . coded exemption justification categories." JA92. The declaration, however, did not identify or discuss any foreseeable harm with respect to the various exemption categories. JA53. The FBI's motion for summary judgment simply asserted in the introduction that "any disclosure of these records will cause foreseeable harm," and never returned to the matter. D.C. Dkt. 23-2, at 1–2.

### 3. Post-Judgment Proceedings

Brown filed a motion to alter judgment on September 15, 2023, D.C. Dkt. 33, and filed a timely notice of appeal from the district court's summary judgment order on October 19, 2023, while the motion to alter judgment was still pending, JA522–24.

In his motion to alter or amend the judgment, Brown raised the district court's failure to analyze whether disclosure of information withheld by the FBI under Exemption 7(D) would result in foreseeable harm, as required by the statute. D.C. Dkt. 33, at 11–15. In opposition, the FBI did not dispute that the foreseeable-harm requirement applies here, but argued that Brown had waived the requirement by not raising it in the summary judgment briefing and that "when invoking [Exemption 7(D)], an

agency need not establish much more than the fact of disclosure to estab-lish foreseeable harm."  D.C. Dkt. 35, at 4–5 (quotation marks omitted). The FBI did not otherwise explain how disclosure of witness descriptions of the shooters would lead to foreseeable harm to witnesses.

The district court held argument on October 23, 2023, at which it de-nied Brown's motion. JA525–39.  The FBI reiterated its position that with respect to Exemption 7(D) and the foreseeable-harm requirement, "the government need not show more than just that the disclosure would be harmful."  JA533.  Brown responded that "[i]n terms of the foreseeable harm doctrine, the agency is required to show more than just that the rec-ords fall within the ambit of the exemption."  JA534.  In denying Brown's motion, the district court stated that it had concluded in its summary judg-ment order "that the government's representations about why certain in-formation should not be released pursuant to the exemptions were, in fact, adequately established."  JA537.  The court added:  "And if I was wrong, I guess the Court of Appeals will tell me."  *Id.*

On appeal, the FBI moved for summary affirmance, and Brown op-posed.  *See* Mot. for Summ. Affirmance (Mar. 5, 2024); Plaintiff-Appel-lant's Resp. in Opp'n to Appellee's Mot. for Summ. Affirmance (Mar. 16, 2024).  Relevant here, in its reply brief, the FBI no longer argued that lim-iting its search to "witness interviews" was a reasonable interpretation of

Brown's request for "witness accounts, narratives, or statements." *See* Reply to Appellant's Opp'n to Appellee's Mot. for Summ. Affirmance at 3–4 (Apr. 25, 2024). Instead, the FBI argued that the district court should be affirmed "because Brown cannot *identify* any other 'witness accounts, narratives, or statements' that would be in the possession of the FBI." *Id.* at 3 (emphasis added).

This Court denied the FBI's motion on June 6, 2024 and appointed *amicus* counsel.

## JURISDICTION

The district court had federal question jurisdiction over this FOIA action pursuant to 28 U.S.C. § 1331.

This Court has jurisdiction to review this appeal under 28 U.S.C. § 1291. Final judgment was entered by a district court within the District of Columbia on August 18, 2023. JA497. Brown filed a timely notice of appeal on October 19, 2023. JA522–24.

## SUMMARY OF ARGUMENT

**I.** The FBI did not properly construe Brown's FOIA request. The FBI arbitrarily narrowed the scope of its search to witness "interviews" despite Brown's request for "accounts, narratives, and statements" from witnesses. This reading is not commensurate with the plain language of Brown's request: Each of "accounts, narratives, and statements" on its

own is broader than the term "interview." The FBI has failed to carry its burden of justifying such a departure. Instead, the FBI avoids the question altogether by framing the issue as a "semantics debate" and faulting Brown for failing to provide evidence that other responsive documents exist. The FBI's attempt to shift its own burden fails.

**II.** The district court failed to analyze the foreseeable-harm requirement, and the FBI cannot satisfy that requirement as to witness descriptions of the shooters withheld pursuant to Exemption 7(D).

**A.** Following a statutory amendment in 2016, an agency may withhold responsive information under FOIA only if the agency shows that disclosure of the information would foreseeably cause harm. The district court did not address this requirement at all, and the FBI mentioned it only in passing, with no sufficient evidence or analysis to allow the court to make an informed assessment. Permitting the foreseeable-harm requirement to be brushed aside in this manner would not comport with the meaningful burden Congress sought to impose.

**B.** The FBI's withholding of witnesses' descriptions of the shooters pursuant to Exemption 7(D) does not meet the foreseeable-harm requirement. The FBI was required to demonstrate that the information it withheld would result in foreseeable harm in view of the policy concerns underlying Exemption 7(D). Instead, the FBI claims that satisfying the

16

standard for Exemption 7(D) is alone sufficient to meet the foreseeable-harm requirement.  That is wrong and inconsistent with this Court's recent precedents, which hold that foreseeable harm must be analyzed separately from an exemption's requirements.  In the context of this case, where nine years have passed since the event at issue and the investigation has concluded, there is no credible argument that disclosure of witnesses' description of the shooters would foreseeably result in harm.

## STANDARD OF REVIEW

"[A] district court's decision on summary judgment in a FOIA case" is reviewed "*de novo.*"  *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 361 (D.C. Cir. 2021).  "To prevail on summary judgment," the FBI "must show beyond material doubt that it has conducted a search reasonably calculated to uncover all relevant documents," *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007) (alteration omitted), and that it has satisfied the elements of any claimed exemptions, *Reps. Comm. for Freedom of the Press*, 3 F.4th at 361.  While "summary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements," courts "must draw 'all justifiable inferences' in favor of the non-movant."  *Aguiar v. DEA*, 865 F.3d 730, 735–36 (D.C. Cir. 2017) (citations omitted).

## ARGUMENT

"FOIA mandates broad disclosure of government records to the public." *Larson v. Dep't of State*, 565 F.3d 857, 861 (D.C. Cir. 2009) (citations omitted). "Its provisions are generally to be construed liberally, subject to nine exemptions, which are to be construed narrowly." *Leopold v. Dep't of Just.*, 94 F.4th 33, 36 (D.C. Cir. 2024) (citations omitted). Congress has been clear that agencies should strive to liberally provide access to their records and should withhold documents only when strictly necessary. Indeed, since FOIA's enactment, Congress has amended the statute seven times to reduce "barriers to the public's right to know." H.R. Rep. No. 114-391, at 8 (2016). Yet here, the FBI disregarded two of the requirements imposed by FOIA to promote the public's access to documents. This Court should not sanction this approach.

## I. The FBI's Search Was Not Adequate Because It Was Limited to Witness "Interviews"

The district court erred by holding that the FBI reasonably construed Brown's request for "accounts, narratives, and statements" as seeking only "interviews." There is no plain-English meaning of "accounts, narratives, and statements" that would limit those terms to cover only witness "interviews." The FBI has attempted to shift onto Brown the burden of establishing the existence of additional responsive documents, but that is not his burden and it does not excuse the FBI's overly narrow search.

18

## A.  Agencies Must Liberally Construe FOIA Requests

With limited exceptions, FOIA requires that "each agency, upon any request for records which [] reasonably describes such records . . . shall make the records promptly available to any person."  5 U.S.C. § 552(a)(3)(A).  "Congress added the 'reasonably describes' standard for a FOIA request in 1974, replacing the requirement that a request name 'identifiable records.'"  *Inst. for Just. v. IRS*, 941 F.3d 567, 572 (D.C. Cir. 2019) (citation omitted).  Congress enacted this change because, in certain cases, agencies "attempt[ed] to use the identification requirements as an excuse for withholding documents."  *Truitt v. Dep't of State*, 897 F.2d 540, 544 (D.C. Cir. 1990).  "According to the Senate Judiciary Committee Report accompanying the amendment, the change 'makes explicit the liberal standard for identification that Congress intended.'"  *Inst. for Just.*, 941 F.3d at 572 (quoting S. Rep. No. 93-854, at 9 (1974)).

Accordingly, "[a]n agency has an obligation under FOIA to conduct an adequate search for responsive records."  *Am. Civil Liberties Union v. Dep't of Homeland Sec.*, No. 20-CV-3204, 2023 WL 2733721, at *7 (D.D.C. Mar. 31, 2023) (citation omitted).  "An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'"  *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (citations omitted).

19

In determining the adequacy of an agency's search, "[courts] must first ascertain the scope of the request itself." *Nation Mag., Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 889 (D.C. Cir. 1995). A request need only "enable a professional employee of the agency who [is] familiar with the subject area of the request to locate the record with a reasonable amount of effort." *Truitt*, 897 F.2d at 545 n.36 (citation omitted); *see also Wallick v. Agric. Mktg. Serv.*, 281 F. Supp. 3d 56, 67 (D.D.C. 2017) (same). "[E]ven when a request is not a model of clarity, an agency must construe [the] request liberally, particularly when a request is reasonably susceptible to a broader reading." *New Orleans Workers' Ctr. for Racial Just. v. U.S. Immigration & Customs Enf't*, 373 F. Supp. 3d 16, 34 (D.D.C. 2019) (quoting *LaCedra v. Exec. Office for U.S. Att'ys*, 317 F.3d 345, 348 (D.C. Cir. 2003)) (quotation marks omitted). In other words, "the agency [is] bound to read [the request] as drafted, not as [the agency] might wish it was drafted." *Miller v. Casey*, 730 F.2d 773, 777 (D.C. Cir. 1984).

## B. The FBI's Construction of Brown's Request Is Arbitrarily and Unlawfully Narrow

The FBI's reading of Brown's request is not commensurate with the request's plain language. Brown requested "accounts, narratives, and statements from witnesses" related to the San Bernardino shooting. JA16. But in construing Brown's request, the FBI "narrowed the results" of its

search "to witness interviews per Plaintiff's request." JA62–63. That is not a reasonable interpretation of the request.

By any metric, construing Brown's request to mean "interviews" does not read the request "as drafted." *Nat'l Sec. Counselors v. CIA*, 931 F. Supp. 2d 77, 101 (D.D.C. 2013). Rather, each of the categories of documents requested by Brown, on its own, is broader than the meaning of "interview." *See, e.g.*, *Republic of Sudan v. Harrison*, 587 U.S. 1, 8 (2019) (using dictionary definitions to determine "[t]he most natural reading of" the Foreign Sovereign Immunities Act of 1976); *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009) (using dictionary definitions to determine the "ordinary meaning" of the Age Discrimination in Employment Act of 1967). In the law enforcement context, "interview" is understood to mean "[a] formal session of questioning or interrogation of a person." *Interview*, Oxford English Dictionary, https://www.oed.com/dictionary/interview_n; *see also Interview,* Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/interview (defining "interview" as a "meeting at which information is obtained . . . from a person").

By contrast, "accounts, narratives, or statements" include witness information obtained in a variety of different contexts and in varying levels of formality. "Statement" is simply "something stated," *Statement,* Mer-

riam-Webster's Dictionary, https://www.merriam-webster.com/diction-ary/statement; *Statement*, Oxford English Dictionary, https://www.oed.com/dictionary/statement_n (defining "statement" as "[t]he action or an act of stating or declaring something"), and "state" is defined as "to express in words," *State*, Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/state; *State*, Oxford English Dictionary, https://www.oed.com/dictionary/state_v (defining "state" as "[t]o express in speech or writing"). "Account" is defined as "a description of facts, conditions, or events." *Account*, Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/account; *Account*, Oxford English Dictionary, https://www.oed.com/dictionary/account_n (defining "account" as "[a] statement or narrative of an event or experience"). "Narrative" is defined as "[a]n account of a series of events, facts, etc., given in order and with the establishing of connections between them." *Narrative*, Oxford English Dictionary, https://www.oed.com/dictionary/narrative_n; *see also Narrative*, Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/narrative (defining "narrative" as "something that is narrated"); *Narrate,* Merriam-Webster's Dictionary, https://www.mer-riam-webster.com/dictionary/narrate (defining "narrate" as "to tell (a story) in detail").

The plain-language meaning of "interview," accordingly, is narrower than each of "accounts, narratives, or statements." "Interview" includes only information formally and intentionally obtained from the witness: Each person involved must plan in advance to attend the interview, may prepare for what they might say, and is aware that their comments will be recorded in some fashion. "Accounts, narratives, or statements" includes information gathered at an interview, but it also goes further. For example, it could include informal statements by witnesses that were overheard by law enforcement or recorded on security footage. Or it could include written statements from witnesses that the FBI gathered for use in its investigation. Or it could include audio recordings of statements by witnesses. And it also could include statements made by witnesses to law enforcement agencies other than the FBI that the FBI then received in the course of its investigation.

As the FBI acknowledges, Brown brought this mismatch to the FBI's attention prior to initiating this litigation. While the FBI's investigation into the San Bernardino shooting was still ongoing, the FBI originally responded to Brown's request by producing 19 pages "provided to a previous requester who sought 'copies, recordings or transcripts of any *interviews* conducted by investigators" relating to the San Bernardino shooting. JA62 n.5 (emphasis added). Brown notified the FBI that the documents

"were not consistent with [his] request" and requested that the FBI "search for and provide records consistent with my original [request]." JA105; *see also* JA62 n.5 ("The 19 pages [were] deemed non-responsive by Plaintiff."). After the San Bernardino investigation closed and the FBI began searching for documents it had previously withheld under Exemption 7(A), the FBI again "narrowed the results to witness interviews per Plaintiff's request." JA62–63.

Below, the FBI argued that its interpretation was "not unreasonable" because the difference between "accounts, narratives, and statements" and "interviews" only "split[s] hairs" and amounts to a "semantics debate." D.C. Dkt. 27, at 2–3. But "cases within this Circuit have often disapproved of agencies narrowing the scope of a FOIA request to exclude materials reasonably within the description provided by the requester." *Nat'l Sec. Counselors*, 931 F. Supp. at 102 (collecting sources). "Applying a unilateral limitation in this manner to exclude otherwise responsive records does not comport with the fundamental FOIA policy of maximum disclosure." *Charles v. Office of Armed Forces Med. Exam'r*, 730 F. Supp. 2d 205, 216 (D.D.C. 2013). In fact, the case the FBI relied on below to accuse Brown of a "semantics debate" states that it is the *agency* that should not "get involved in a semantic debate" to justify an unduly narrow view of a plaintiff's request. *Hemenway v. Hughes*, 601 F. Supp. 1002, 1005 (D.D.C.

1985) ("Because the defendants had reasonably clear notice of what the plaintiff sought, the defendants had an obligation to provide [the information].").

Perhaps recognizing the problems with this argument, the FBI shifted its position on appeal. In its reply in support of its motion for summary affirmance on appeal, the FBI no longer sought to defend its interpretation of Brown's request, but instead argued that it did not "limit the scope of Brown's request" at all, "because Brown cannot identify any other 'witness accounts, narratives, or statements' that would be in the possession of the FBI." *See* Reply to Appellant's Opp'n to Appellee's Mot. for Summ. Affirmance at 3 (Apr. 25, 2024).

This argument fails too. Requiring Brown to identify specific additional materials in the possession of the FBI that might be responsive to his request impermissibly shifts the burden. It is the FBI, not Brown, who bears the burden of establishing that "'any limitations' an agency places on a FOIA search [are] reasonable." *Charles*, 730 F. Supp. 2d at 216 (quoting *McGehee v. CIA*, 697 F.2d 1095, 1101 (D.C. Cir. 1983)). "The issue is *not* whether any further documents might conceivably exist but rather whether the government's search for responsive documents was adequate." *Weisberg v. U.S. Dep't of Just.*, 705 F.2d 1344, 1351 (D.C. Cir. 1983) (quoting *Perry v. Block*, 684 F.2d 121, 128 (D.C. Cir. 1982)). If no

such documents exist, the FBI could easily say so (in a sworn declaration) and obviate this dispute. But the FBI has not done so and has never represented that its search through CRS did *not* turn up any witness accounts, narratives, or statements other than the witness interviews it produced. *Cf. Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990) ("At the very least, [the FBI] was required to explain in its affidavit that no other record system was likely to produce responsive documents.").

The FBI's unilateral and unexplained narrowing of Brown's request was not reasonable, and its search was thus inadequate. *See, e.g.*, *Charles*, 730 F. Supp. 2d at 215–16 (finding unreasonable agency's decision to interpret request for "autopsy reports 'commenting on, discussing or indicating' fatal bullet wounds" to include only "documents containing explicit 'statements' about these topics"); *Nicholls v. U.S. Office of Pers. Mgmt.*, 863 F. Supp. 2d 4, 10–11 (D.D.C. 2012) (holding that an agency's construction of "appeal" to exclude "reconsiderations" was not reasonable). The district court's order granting summary judgment should therefore be reversed, with instructions for the FBI to conduct a renewed search that reasonably captures all documents responsive to Brown's request.

## II. The District Court Erred by Failing to Consider the Foreseeable-Harm Requirement

The district court also erred by failing to consider whether the FBI met its burden under FOIA's foreseeable-harm requirement. The district

court did not examine this element at all, and the FBI addressed it only in passing (briefly in its supporting declaration and in one sentence its motion for summary judgment). That is reason enough to at least vacate the decision and remand to the district court to allow that court to consider in the first instance whether the FBI has satisfied this element. With respect to Exemption 7(D) in particular, however, no remand is necessary, because the FBI has offered no cogent explanation for why disclosing information regarding the shooters' appearances would result in foreseeable harm.

## A. The District Court Failed to Examine the Foreseeable-Harm Requirement

Prior to 2016, agencies could withhold information "if it '[fell] within one of nine exemptions'" to FOIA's disclosure requirement. *Murphy v. Exec. Office for U.S. Atty's*, 789 F.3d 204, 206 (D.C. Cir. 2015) (citation omitted). Over time, however, both the Legislative and Executive Branches grew "concern[ed] that some agencies [were] overusing the FOIA exemptions that allow, but do not require, information to be withheld from disclosure." *Reps. Comm. for Freedom of the Press*, 3 F.4th at 369 (quoting S. Rep. No. 114-4 (2015)). "[I]n 2009, then-President Barack Obama issued direction to Executive Branch agencies" to "administer FOIA 'with a clear presumption: In the face of doubt, openness prevails.'" *Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*, 436 F. Supp. 3d 90, 104 (D.D.C. 2019) (citation omitted). In response, "then-Attorney General Eric

27

Holder implemented the President's directive by establishing" a policy that the Department of Justice "would now 'defend a denial of a FOIA request only if (1) the agency reasonably fores[aw] that disclosure would harm an interest protected by one of [FOIA's] statutory exemptions, or (2) disclosure [was] prohibited by law.'" *Id.* This policy became known as the "foreseeable-harm requirement." *Id.*

In 2016, "[d]espite the Executive Branch's efforts to self-regulate," Congress "remained concerned" that "[w]hile some agencies had 'made an effort to comply with the letter of the law, very few ha[d] complied with the spirit of the law.'" *Id.* (quoting 162 Cong. Rec. H3717 (2016)). Congress accordingly enacted the FOIA Improvement Act of 2016, which "implemented several changes to FOIA that were designed to increase the availability of government records to the public." *Reps. Comm. for Freedom of the Press*, 3 F.4th at 357 (citations omitted). In particular, Congress "codified the 'foreseeable harm' standard established in 2009 by then Attorney General Holder." *Ctr. for Investigative Reporting*, 436 F. Supp. 3d at 105 (citations omitted). As amended, FOIA now states in relevant part:

(8)

    (A) An agency shall—

        (i) withhold information under this section only if—

(I) the agency reasonably foresees that disclosure would harm an interest protected by an exemption described in subsection (b); or

(II) disclosure is prohibited by law; and

(ii)

(I) consider whether partial disclosure of information is possible whenever the agency determines that a full disclosure of a requested record is not possible; and

(II) take reasonable steps necessary to segregate and release nonexempt information; and

5 U.S.C. § 552(a)(8)(A).

The "foreseeable harm requirement imposes an independent and meaningful burden on agencies." *Reps. Comm. for Freedom of the Press*, 3 F.4th at 369 (citation, quotation marks, and alterations omitted). To satisfy the requirement, agencies must "articulate both the nature of the harm from release and the link between the specified harm and specific information contained in the material withheld." *Id.* (alteration omitted). "[W]hether a requested record falls within an exemption and whether the disclosure of that record would foreseeably harm an interest protected by the exemption are distinct, consecutive inquiries." *Leopold*, 94 F.4th at 37.

The district court's opinion is devoid of any reference to the foreseeable-harm requirement. *See generally* JA459. That is legal error. For a

district court's grant of summary judgment to survive appeal, it must "explain its conclusion" on the foreseeable-harm requirement. *Leopold*, 94 F.4th at 38. Foreseeable harm is a "statutory requirement" and must be assessed by the court before granting summary judgment to the government. *Wash. Post Co. v. Special Inspector Gen. for Afghanistan Reconstr.*, No. 18-CV-2622, 2021 WL 4502106, at *22 (D.D.C. Sept. 30, 2021). The judgment can be vacated on this ground alone.

The district court's failure to address this essential element is likely attributable to the fact that the FBI addressed this requirement only twice throughout this litigation: (i) in one paragraph and one sentence of its declaration submitted in support of summary judgment; and (ii) in one sentence of its opening brief in support of summary judgment. These two cursory mentions of the foreseeable-harm requirement are not enough to "prove that [the FBI] has fully discharged its obligations under the FOIA." *Friends of Blackwater v. U.S. Dep't of Interior*, 391 F. Supp. 2d 115, 119 (D.D.C. 2005) (citation omitted).

Starting with the FBI's declaration, the FBI purported to analyze the foreseeable-harm requirement in a one-paragraph section stating in conclusory terms that the FBI complied with the foreseeable-harm requirement. JA92. According to the declaration, the FBI "only withheld records (or portions of records) where it determined" that "foreseeable harm would

30

result from disclosure" and the "foreseeable harm is more fully described within each" of its "exemption justification categories." *Id.* But a "one paragraph" discussion of foreseeable harm that "says simply that the agency's FOIA personnel conducted a foreseeable harm analysis" is insufficient to establish foreseeable harm. *Louise Trauma Ctr. LLC v. U.S. Dep't of Homeland Sec.*, No. 20-CV-1128, 2022 WL 1081097, at \*5 (D.D.C. Apr. 11, 2022). This is especially true considering that the FBI's *Vaughn* index does not address foreseeable harm at all. *See* JA139–50; *see also Friends of the River v. U.S. Army Corps of Eng'rs*, No. 16-CV-2327, 2023 WL 4105168, at \*5 (D.D.C. June 21, 2023) (holding that foreseeable-harm requirement was not met where declarations and *Vaughn* indices "ma[d]e almost no effort to articulate what harms would result from the disclosure of the withheld records"); *Jud. Watch, Inc. v. U.S. Dep't of Com.*, 375 F. Supp. 3d 93, 100 (D.D.C. 2019) (holding that foreseeable-harm requirement was not met where "the declarations and supporting Vaughn indexes" included only "general explanations").

The FBI also purported to comply with the foreseeable-harm requirement in its segregability analysis, stating that it "withheld [records that] would trigger foreseeable harm . . . ." JA93. The FBI does not offer any explanation of why the withheld information meets the foreseeable-harm requirement in this section of its declaration. *See generally* JA93. Without

an adequate explanation of how the FBI conducted its foreseeable harm analysis in the first instance, the FBI's claim that it complied with the requirement during its segregability analysis must also fail. *See, e.g.*, *Moeller v. Equal Emp. Opportunity Comm'n*, No. 19-CV-2230, 2021 WL 1025815, at *8 (D.D.C. Mar. 17, 2021) ("Without adequate support for the [agency's] exemptions and claims of foreseeable harm, the Court is unable to determine whether non-exempt material was appropriately segregated at this time.").

The FBI's briefing to the district court was even thinner. The only reference to the foreseeable-harm requirement in the FBI's summary judgment briefing appears in the introduction of its opening brief, stating that the "FBI is entitled to summary judgment here because . . . any disclosure of these records will cause foreseeable harm." D.C. Dkt. 23-2, at 1–2. The FBI's failure to offer any "argument whatsoever that it has satisfied the foreseeable-harm requirement" is "fatal to [the FBI's] position." *Shteynlyuger v. Ctrs. for Medicare & Medicaid Servs.*, 698 F. Supp. 3d 82, 124 (D.D.C. 2023); *see also Reps. Comm. for Freedom of the Press v. U.S. Customs & Border Prot.*, 567 F. Supp. 3d 97, 124 (D.D.C. 2021) (holding that foreseeable harm had not been met for documents withheld under Exemption 5 where "[the agency] ha[d] barely provided any explanation at all"). The FBI has "the burden to submit evidence and offer reasoning

based on that evidence" demonstrating foreseeable harm, and "[v]ague and conclusory filings will be insufficient." *Leopold*, 94 F.4th at 38.

The only defense the FBI has so far offered for the district court's failure to analyze this statutory element is to argue that Brown waived the issue. *See* D.C. Dkt. 35, at 4–5. At the outset, the FBI confuses waiver (the knowing relinquishment of a right) with forfeiture (the failure to timely assert a right), which is significant because the consequences of the former are far more severe than those of the latter. *See United States v. Olano*, 507 U.S. 725, 733–34 (1993). And Brown *did* bring this issue to the attention of the district court in his post-judgment motion, *see* D.C. D.C. Dkt. 33, at 11–15, and the court denied that motion on grounds other than waiver or forfeiture, instead observing: "[I]f I was wrong, I guess the Court of Appeals will tell me." JA537.

In any event, foreseeable harm "is a statutory requirement," and the district court therefore was "bound to make its own determination on summary judgment issues." *Wash. Post Co.*, 2021 WL 4502106, at *22. It is the *FBI*'s burden to affirmatively establish that the statutory elements for an exemption are satisfied. *Charles*, 730 F. Supp. 2d at 216. The district court therefore could not grant the FBI summary judgment without assessing whether the FBI had met that burden. Moreover, Brown is a *pro*

*se* plaintiff, whose pleadings are reviewed under less stringent standards. *See Ho v. Garland*, 106 F.4th 47, 50 (D.C. Cir. 2024).

Notwithstanding the inadequacies in the FBI's foreseeable harm analysis, other than with regard to Exemption 7(D), *see infra* 34–42, *amicus curiae* takes no position on whether the FBI could establish foreseeable harm on remand with the submission of a supplemental declaration. However, because the district court failed to examine this element at all, the decision must at least be vacated and the case remanded on that basis.

## B.  The FBI Has Not Demonstrated That Releasing Information Subject to Exemption 7(D) Would Cause Foreseeable Harm

The FBI withheld "information provided by[] individuals who conveyed critical information regarding the San Bernardino shooting" under Exemption 7(D).  JA86.  But as to Exemption 7(D), the FBI has provided no cogent explanation for why the disclosure of witnesses' descriptions of the shooters—without disclosure of the witnesses' identities—would give rise to foreseeable harm.  For that reason, the judgment as to Exemption 7(D) should be reversed, with instructions for the FBI to conduct a renewed review of the documents that does not rely on Exemption 7(D) to withhold such accounts.

Under Exemption 7(D), an agency may withhold:

records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (D) could reasonably be expected to disclose the identity of a confidential source . . . and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D). This provision has been interpreted to establish "two separate categories of exemption: (1) information that would 'disclose the identity of a confidential source,' and (2) information that would 'disclose … confidential information furnished only by the confidential source.'" *Shaw v. FBI*, 749 F.2d 58, 62 (D.C. Cir. 1984). Prior to the enactment of the FOIA Improvement Act of 2016, it was "irrelevant to the second inquiry whether the information would reveal the identity of the source." *Id.* Instead, all information provided by a confidential source in connection with a criminal investigation was protected from disclosure. *See id.*

Following the enactment of the foreseeable-harm requirement, however, it is no longer the case that information provided by a confidential source in the context of a criminal investigation is always protected from disclosure. "[T]he foreseeable harm requirement 'impose[s] an independent and meaningful burden on agencies.'" *Reps. Comm. for Freedom of the Press*, 3 F.4th at 369 (citation omitted). Before withholding information,

35

an "agency must specifically and thoughtfully consider foreseeable harm from disclosure of *otherwise-exempt* information." *Leopold*, 94 F.4th at 38 (citation omitted).

Accordingly, to properly withhold information provided by a confidential source, the FBI must prove that it "reasonably foresees that disclosure would harm an interest protected by" Exemption 7(D).   5 U.S.C. § 552(a)(8)(A)(i)(I).   Exemption 7(D) "is meant to (1) protect confidential sources from retaliation that may result from the disclosure of their participation in law enforcement activities, and (2) 'encourage cooperation with law enforcement agencies by enabling the agencies to keep their informants' identities confidential.'" S. Rep. No. 114-4, at 329 n.18 (2015) (quoting *Ortiz v. Dep't of Health & Human Servs.*, 70 F.3d 729, 732 (2d Cir. 1995)).   Taken together, the FBI must release any Exemption 7(D) information, including "any reasonably segregable information," that "could be disclosed without causing reasonably foreseeable" retaliation or reluctance to cooperate with law enforcement.   *Leopold*, 94 F.4th at 37. The FBI cannot meet the standard for withholding.

*First*, the district court applied the wrong legal standard.  The district court held that "there is no question—nor is there any dispute from the plaintiff—that the FBI's sources were confidential, and that the information was compiled during a criminal investigation," and that on that

basis, "the content at issue, namely, the descriptions of the shooters, is irrelevant to the analysis of the propriety of the withholdings under Exemption 7(D)." JA490; *see* Mot. for Sum. Affirmance, at 13 (Mar. 5, 2024).

This analysis is legal error. Simply holding that an exemption applies is insufficient under the FOIA Improvement Act: "[T]he agency must specifically and thoughtfully' consider foreseeable harm from disclosure of *otherwise-exempt* information, including whether 'partial disclosure of information is possible.'" *Leopold*, 94 F.4th at 38 (citation omitted). In doing so, the FBI must take into account the "age, *content*, and character" of the document. *Ctr. for Investigative Reporting*, 436 F. Supp. 3d at 105 (emphasis added) (citation omitted). "The sequentiality instruction . . . cannot be brushed aside in this context." *Leopold*, 94 F.4th at 38; *see also Shteyn-lyuger*, 698 F. Supp. 3d at 124 ("[The FBI] makes no argument whatsoever that it has satisfied the foreseeable-harm requirement . . . [and] that omission is fatal.").

*Second*, the FBI cannot satisfy the foreseeable-harm requirement simply by pointing to the elements of Exemption 7(D). In the district court, the FBI argued that the mere "fact of disclosure" of information provided under an assurance of confidentiality is enough to satisfy the foreseeable-harm requirement. D.C. Dkt. 35, at 5 (quotation marks omitted) (citing *Wash. Post*, 2021 WL 4502106, at *22; *Ecological Rights Found. v.*

*EPA*, 541 F. Supp. 3d 34, 42 (D.D.C. 2021)).  That is wrong: "It is apparent from the statutory text alone that the government's successful invocation of a FOIA exemption cannot justify its withholding of exempt material without a more particularized inquiry into what sort of foreseeable harm would result from the material's release." *Reps. Comm. for Freedom of the Press*, 3 F.4th at 369 n.2.  Accordingly, "requir[ing] an agency merely to show that disclosure would be at odds with confidentiality[] would render the foreseeable-harm requirement a nullity in all Exemption [7(D)] cases." *Shteynlyuger*, 698 F. Supp. 3d at 124 (holding that an agency failed to show foreseeable harm under an Exemption 4 withholding).

Indeed, if Congress did not wish for the foreseeable-harm requirement to apply to Exemption 7(D), it could have said so, as it did for Exemption 3, which is expressly carved out from the foreseeable-harm requirement.  5 U.S.C. § 552(a)(8)(B) ("Nothing in this paragraph requires disclosure of information that is . . . otherwise exempted from disclosure under subsection (b)(3)."); *see also Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.").  While "establishing [confidentiality]" might "go a long way to show the risk of foreseeable harm," the agency still bears the burden to "provide a non-generalized explanation on the foreseeable

harm that would result from disclosure." *Reps. Comm. for Freedom of the Press*, 567 F. Supp. 3d at 124.

*Third*, the FBI has claimed that if it is required to release information provided by confidential witnesses, persons "sympathetic to the San Bernardino suspects could seek to deter a source's cooperation with law enforcement through reprisal." JA86. This reasoning is not sufficient, because "the foreseeability requirement means that agencies must concretely explain how disclosure 'would'—not 'could'—"deter a source's cooperation with law enforcement. *Reps. Comm. for Freedom of the Press*, 3 F.4th at 369–70. Indeed, nearly nine years have passed since the San Bernardino shooting, the investigation into the shooting has concluded, and "the suspected shooters are deceased." JA56, JA86. It is entirely unclear, based on the evidence submitted by the FBI, why or how a person could seek to deter cooperation with an investigation that has concluded. And as Brown has made clear, he does not seek release of the identity of the witnesses—only their accounts of the shooters. The FBI's proffered justification therefore is nothing more than the kind of "mere 'speculative or abstract fears'" and "generalized assertions" this Court has held insufficient to show foreseeable harm. *Reps. Comm. for Freedom of the Press*, 3 F.4th at 369, 372 (citation omitted).

*Fourth*, the FBI claims that releasing the information would undermine the ability of sources to "furnish information to the FBI with complete candor and without the understandable tendency to hedge or withhold information because of fear that their cooperation with the FBI will later be made public." JA84. "The fatal flaw in" the FBI's "justification is that it is essentially a restatement of 'the generic rationale'" for Exemption 7(D). *Nat'l Pub. Radio, Inc. v. U.S. Dep't of Homeland Sec.*, No. 20-CV-2468, 2022 WL 4534730, at *8 (D.D.C. Sep. 28, 2022); *see also Reps. Comm. for Freedom of the Press*, 567 F. Supp. 3d at 115 (holding that foreseeable harm was not met where "[t]he harm that [the agency] identifies . . . undergirds the [exemption] in every case").

The foreseeable-harm requirement demands an application of the principles underlying the exemption: "the agency [must] articulate why *this* disclosure would *be particularly* harmful." *Nat'l Pub. Radio, Inc.*, 2022 WL 4534730, at *8. And, again, the FBI has not explained why disclosure of witness accounts (without witness identities) nine years later and after its investigation into the San Bernardino shooting has closed would chill other sources' cooperation with the FBI. *See, e.g.*, *Reps. Comm. for Freedom of the Press*, 3 F.4th at 372 (holding that bare assertions that the release of information would "have an 'inhibiting effect' by 'chill[ing]' full and frank discussion" were not sufficient to meet the foreseeable harm

standard) (citation omitted); *Ctr. for Investigative Reporting*, 436 F. Supp. 3d at 105 (stating that Congress expected agencies to take into account a document's "age, content, and character" in conducting the foreseeable harm analysis) (citation omitted).

*Finally*, the FBI may not avoid its obligation to conduct the foreseeable harm analysis under Exemption 7(D) simply because multiple exemptions apply to a given document. The FBI "conducted its segregability review on a faulty" application of the foreseeable-harm requirement, and its review thus fails to "take reasonable steps necessary to segregate and release nonexempt information." *Savage v. U.S. Dep't of Just.*, No. 22-CV-2477, 2024 WL 2880438, at *11–12 (D.D.C. June 7, 2024) (holding that the agency failed to apply the foreseeable-harm requirement to its segregability analysis, thus leaving "the court [] to assess on its own whether any part of any report is segregable" *in camera*); *see also Moeller*, 2021 WL 1025815, at *8 ("Without adequate support for the [agency's] exemptions and claims of foreseeable harm, the Court is unable to determine whether non-exempt material was appropriately segregated at this time."); *Dalal v. U.S. Dep't of Just.*, 643 F. Supp. 3d 33, 77 (D.D.C. 2022) (reserving ruling on the agency's segregability analysis, in part, until the agency submitted supplemental declarations to correct an inadequate foreseeable harm analysis). Only by re-reviewing the documents applying

the correct standard can the FBI determine which portions may be withheld and which must be produced.

\* \* \*

The foreseeable-harm requirement demands more than compliance in name only.  Permitting agencies to withhold information based only on the application of an exemption would essentially abolish the separate foreseeable-harm requirement.  The district court's order granting summary judgment should therefore be vacated as to all exemptions and reversed as to Exemption 7(D), with instructions to the FBI to conduct a renewed analysis of documents withheld under Exemption 7(D) to determine if any reasonably segregable portion may be disclosed without foreseeable harm.

## CONCLUSION

For the foregoing reasons, the district court's grant of summary judgment to the FBI should be vacated in part and reversed in part, and the case should be remanded for further proceedings.

Respectfully submitted,

Chloe S. Fife
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000

*/s/ Joshua M. Wesneski*

Zachary D. Tripp
Joshua M. Wesneski
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
(202) 682-7000
joshua.wesneski@weil.com

December 16, 2024

## CERTIFICATE OF COMPLIANCE

The undersigned counsel of record certifies pursuant to Fed. R. App. P. 32(g) that the Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because, excluding the parts of the Brief exempted by Fed. R. App. P. 32(f), this document contains 8,898 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Century Schoolbook font in 14 point size.

*/s/ Joshua M. Wesneski*

Joshua M. Wesneski
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
(202) 682-7000
joshua.wesneski@weil.com

December 16, 2024