**THE CASE IS SCHEDULED FOR ORAL ARGUMENT ON JANUARY 14, 2025**

No. 23-5244

# United States Court of Appeals for the District of Columbia Circuit

GARY SEBASTIAN BROWN, III

*Appellant,*

v.

FEDERAL BUREAU OF INVESTIGATION

*Appellee.*

Appeal from the United States District Court for the District of Columbia, No. 1:21-cv-01639

## REPLY BRIEF FOR COURT-APPOINTED *AMICUS CURIAE* JOSHUA M. WESNESKI IN SUPPORT OF APPELLANT

Chloe S. Fife
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000

Zachary D. Tripp
Joshua M. Wesneski
    *Counsel of Record &*
    *Court-Appointed Amicus Curiae*
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
(202) 682-7000
joshua.wesneski@weil.com

*Counsel for Court-Appointed Amicus Curiae*

# TABLE OF CONTENTS

Introduction and Summary of Argument......................................................... 1

Argument ......................................................................................................... 3

I. The FBI's Interpretation of the Scope of Brown's Request Was Unduly Narrow ........................................................................... 3

II. The District Court and the FBI Failed to Properly Apply the Foreseeable-Harm Requirement ........................................................ 9

    A. The District Court Failed to Address the Foreseeable-Harm Requirement .................................................................................... 9

    B. The FBI Did Not Carry Its Burden to Prove That Releasing Information Subject to Exemption 7(D) Would Cause Foreseeable Harm ...................................................................... 15

Conclusion ....................................................................................................... 23

Certificate of Compliance .............................................................................. 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Boundaoui v. FBI,*
    No. 17-CV-4782 (N.D. Ill.) ................................................................ 17

*Charles v. Off. of Armed Forces Med. Exam'r,*
    730 F. Supp. 2d 205 (D.D.C. 2010) .................................................... 7

*Clemente v. FBI,*
    No. 20-CV-1527 (D.D.C.) .................................................................... 17

*Elec. Priv. Info. Ctr. v. Dep't of Justice,*
    296 F. Supp. 3d 109 (D.D.C. 2017) .................................................. 10

*Guarascio v. FBI,*
    No. 18-CV-2791 (D.D.C.) .................................................................... 18

*Hemenway v. Hughes,*
    601 F. Supp. 1002 (D.D.C. 1985) ....................................................... 7

*Huddleston v. FBI,*
    No. 20-CV-447 (E.D. Tex.) ................................................................. 18

*Inst. for Just. v. IRS,*
    941 F.3d 567 (D.C. Cir. 2019) ....................................................... 3, 5

*Kowalczyk v. Dep't of Justice,*
    73 F.3d 386 (D.C. Cir. 1996) ........................................................ 5, 8

*LaCedra v. Exec. Off. for U.S. Att'ys,*
    317 F.3d 345 (D.C. Cir. 2003) ............................................................ 4

*Leopold v. Dep't of Justice,*
    94 F.4th 33 (D.C. Cir. 2024) ..................................................... 13, 14

*Miller v. Casey,*
    730 F.2d 773 (D.C. Cir. 1984) ............................................................ 3

*Murthy v. Missouri,*
603 U.S. 43 (2024) ........................................................................ 12

*Nat'l Sec. Counselors v. CIA,*
931 F. Supp. 2d 77 (D.D.C. 2013) ...................................................... 4

*Nation Mag. v. U.S. Customs Serv.,*
71 F.3d 885 (D.C. Cir. 1995) ........................................................ 6, 7

*Nicholls v. U.S. Off. of Pers. Mgmt.,*
863 F. Supp. 2d 4 (D.D.C. 2012) ....................................................... 8

*NPR v. DHS,*
2022 WL 4534730 (D.D.C. Sept. 28, 2022) ................................ 12, 17

*Oglesby v. U.S. Dep't of Army,*
920 F.2d 57 (D.C. Cir. 1990) ............................................................. 9

*Radar Online LLC v. FBI,*
No. 17-CV-3956 (S.D.N.Y.) ............................................................ 18

*Reps. Comm. for Freedom of the Press v. CBP,*
567 F. Supp. 3d 97 (D.D.C. 2021) .............................................. 16, 20

*Reps. Comm. for Freedom of the Press v. FBI,*
3 F.4th 350 (D.C. Cir. 2021) ............................... 12, 14, 16, 17, 19, 21

*Schoenman v. FBI,*
763 F. Supp. 2d 173 (D.D.C. 2011) ........................................... 10, 13

*Shteynlyuger v. Ctrs. For Medicare & Medicaid Servs.,*
698 F. Supp. 3d 82 (D.D.C. 2023) .................................................... 13

*Wash. Post Co. v. Special Inspector Gen. for Afg. Reconstr.,*
2021 WL 4502106 (D.D.C. Sept. 30, 2021) ...................................... 14

*Watkins Law & Advocacy, PLLC v. U.S. Department of Justice*
78 F.4th 436 (D.C. Cir. 2023) ............................................................ 6

*Weisberg v. U.S. Dep't of Just.,*
705 F.2d 1344 (D.C. Cir. 1983) ......................................................... 8

*Wright v. FBI*,
   No. 18-CV-687 (D.D.C.) ....................................................................... 18

**Statutes**

5 U.S.C. § 552(a)(8) ........................................................................ 21, 22

5 U.S.C. § 552(b)(6) ............................................................................... 13

5 U.S.C. § 552(b)(7) ..................................................................... 10, 11, 13

# GLOSSARY

Brown ...................................................................Gary Sebastian Brown III

FBI ...................................................................Federal Bureau of Investigation

FOIA ...................................................................Freedom of Information Act

## INTRODUCTION AND SUMMARY OF ARGUMENT

The district court committed two legal errors that require vacatur and/or reversal. The FBI's answer brief elides the central legal issues, offers high-level statements about FOIA divorced from the facts of this case, and makes conclusory assertions about the sufficiency of the evidence. None of its arguments persuades.

*First*, the district court incorrectly upheld the FBI's narrow interpretation of Brown's request. While Brown's request for "accounts, narratives, or statements" certainly *includes* witness "interviews," it is not limited to that formal setting. In its answer brief, the FBI offers little defense of its interpretation. Instead, much of the FBI's brief consists of generic statements about the precision required of FOIA searches—an issue not disputed here. In fact, the FBI does not cite a single case in which a court upheld an agency interpretation narrowing the plain language of a FOIA request. The precedent is therefore uniform: An agency may not evade its responsibilities under FOIA by adopting an unduly or unjustifiably narrow view of a FOIA request. That is what the FBI did here, and summary judgment in its favor should be reversed in that respect.

*Second*, the district court incorrectly upheld the FBI's invocation of various FOIA exemptions, including Exemption 7(D), without an analysis of foreseeable harm. The FBI contends that the district court actually did

conduct that analysis, yet the term "foreseeable harm" or its analogues appears nowhere in the district court's decision. That is reason enough to at least vacate the opinion. With respect to Exemption 7(D), however, the judgment should be reversed. The FBI failed entirely to submit non-conclusory, non-generalized evidence of harm foreseeably flowing from the disclosure of the kinds of witness descriptions and accounts Brown seeks. Beyond claims about the "singular" nature of the information—which the FBI routinely invokes when Exemption 7(D) is at issue—there is no evidence about how disclosure of *these* facts on *this* record would actually subject confidential sources to a risk of foreseeable harm.

Congress has amended FOIA over the years to make clear that the statute means what it says. Agencies must liberally construe requests for access to public records and must justify any withholding of public records through a specific and articulable risk of foreseeable harm. These are not matters of form or process; they are substantive limitations on the ability of the government to withhold information from the people. While there are some circumstances in which law enforcement (like other agencies) must be able to maintain secrecy, Congress has strictly circumscribed that universe. This Court has repeatedly enforced those limitations, and it should do so again here.

## ARGUMENT

### I. The FBI's Interpretation of the Scope of Brown's Request Was Unduly Narrow

Notwithstanding the plain and broad language of Brown's request—seeking all "accounts, narratives, or statements" concerning descriptions of the shooters at Sen Bernardino—the FBI produced only "interviews" with witnesses. That limitation on the scope of production conflicts with the statute's "liberal standard for identification" of responsive documents. *Inst. for Just. v. IRS*, 941 F.3d 567, 572 (D.C. Cir. 2019) (quotation marks omitted). The FBI's construction of Brown's request—and the district court's adoption of that interpretation—was a legal error that necessitates reversal.

An "agency [is] bound to read [the request] as drafted, not as [the agency] might wish it was drafted," *Miller v. Casey*, 730 F.2d 773, 777 (D.C. Cir. 1984), and contrary to the FBI's suggestion, *see* Answer Br. 17–18, an "interview" is not the same thing as an "account[], narrative[], [or] statement[]." The FBI provides no authority that would limit "accounts, narratives, and statements" *only* to "interviews." It points to the dictionary definitions for "account" as a "statement or narrative of an event or experience" and "narrative" as an "account of a series of events, facts, etc., given in order and with the establishing of connections between them," Answer Br. 18, yet does not explain how either of those definitions could

be construed as comprising only "interviews."  They cannot; neither definition is limited to a formal witness interview.  And the FBI urges that "statement" "might also be understood" to mean a "formal" written or oral account, *id.* at 20, but even if that term *could* be construed as narrowly as the FBI suggests, it is the government's "obligation under the law of this circuit to construe a FOIA request liberally," including where the "request is *reasonably susceptible* to the broader reading," *LaCedra v. Exec. Off. for U.S. Att'ys*, 317 F.3d 345, 348 (D.C. Cir. 2003) (emphasis added) (quotation marks omitted); *see also Nat'l Sec. Counselors v. CIA*, 931 F. Supp. 2d 77, 102 (D.D.C. 2013) ("[C]ases within this Circuit have often disapproved of agencies narrowing the scope of a FOIA request to exclude materials reasonably within the description provided by the requester.").

The FBI contends that Brown "concede[d] that his request for witness accounts, narratives, and statements would likely be included in the FBI's search for interviews."  Answer Br. 18–19 (alteration and quotation marks omitted).  That is inaccurate—what Brown actually said was: "Although all interviews necessarily include witness accounts, narratives, and statements, not all witness accounts, narratives, and statements are rightly subsumed under the category 'interviews.'"  JA153.  Brown thus correctly identified the precise problem with the FBI's approach: It assumed that because Brown's request *included* witness interviews, that must be the

4

entire universe of documents he seeks. That interpretation is inconsistent with the plain language of the request.[1]

The FBI musters no authority supporting its effort to artificially cabin the scope of Brown's request. In fact, the only case on which the FBI relies where the scope or interpretation of a FOIA request was even arguably at issue is *Kowalczyk v. Department of Justice*, 73 F.3d 386, 389 (D.C. Cir. 1996). Answer Br. 19. But that case held simply that an agency "is not obliged to look beyond the four corners of the request for leads to the location of responsive documents," and that the agency was therefore not required to search for records at an office other than the one to which the FOIA request was directed. *Kowalczyk*, 73 F.3d at 389. *Amicus* makes no claim otherwise: The broad scope of Brown's request is apparent on its face and does not require resort to any external materials. *Cf. Inst. for Just.*, 941 F.3d at 572 (explaining that *Kowalczyk* does not suggest that an agency "may narrowly construe the scope of the [plaintiff's] request")).

The remaining cases on which the FBI relies do not concern disputes about the scope of a request. *See* Answer Br. 19. In *Meeropol v. Meese*, the agency head had "no doubt in [his] mind" about the extraordinary breadth of the FOIA request at issue there; the question was whether the agency

---

[1] The FBI also references Brown's statement that the FBI's narrow interpretation may have been a "good faith misunderstanding." Answer Br. 20. But there is no "bad faith" element under FOIA.

had in fact produced the documents it conceded fell within the request. 790 F.2d 942, 945, 950–56 (D.C. Cir. 1986). In *Watkins Law & Advocacy, PLLC v. U.S. Department of Justice*, the plaintiff challenged the file locations searched and the search terms used; again, the scope of the request was not in dispute. 78 F.4th 436, 442–45 (D.C. Cir. 2023). And in *Ancient Coin Collectors Guild v. U.S. Department of State*, the plaintiff challenged the adequacy of the search methodology based principally on the number of documents produced, but there was no discussion of scope. 641 F.3d 504, 514–15 (D.C. Cir. 2011). None of these cases support the FBI's approach here.

The FBI's reliance on this inapposite authority parallels its repeated conflation of the *scope* of the request with the adequacy of the FBI's search *methodology*—namely, the FBI's use of CRS and Sentinel to locate responsive documents. *See* Answer Br. 16–19. But *amicus* has raised no objection to the use of CRS or Sentinel, and has not argued that the FBI should search other file locations or use other search terms. What *amicus* objects to is the FBI's unjustifiably narrow interpretation of the *scope* of Brown's request, that is, its "narrow[ing] [of] the results to 'witness interviews." *Id.* at 9. "[A]scertain[ing] the scope of the request itself" is a threshold question that must be addressed before the adequacy of the search methodology can even be assessed. *Nation Mag. v. U.S. Customs Serv.*, 71 F.3d 885,

889 (D.C. Cir. 1995). Regardless of *how* the FBI searched for responsive records, it started from the wrong place by construing Brown's request as it did. And notably, the FBI has never denied that this "narrow[ing]" process excluded documents that are responsive to Brown's request as construed by Brown and *amicus* (i.e., more broadly than "interviews").[2]

Accordingly, the FBI has not cited a single case upholding an agency's narrowing of the scope of the plain language of a FOIA request. By contrast, there are numerous instances in which this Court or the district courts have rejected comparable "semantics debate[s]" by agencies trying to narrow a FOIA request. *Hemenway v. Hughes*, 601 F. Supp. 1002, 1005 (D.D.C. 1985); *see also Nation Mag.*, 71 F.3d at 890 (rejecting agency's construction of request as seeking only records indexed under a subject's name, as opposed to records "pertaining" to the subject); *Charles v. Off. of Armed Forces Med. Exam'r*, 730 F. Supp. 2d 205, 215 (D.D.C. 2010) ("[T]he

---

[2] For that reason, the FBI's repeated reference to one example of statements that might have been excluded from the FBI's production—"informal statements by witnesses that were overheard by law enforcement or recorded on security footage," *Amicus* Br. 23; *see also* Answer Br. 11, 21–23—is a red herring. If CRS contains additional responsive documents withheld by the FBI because of its narrow interpretation of Brown's request—such as a written or recorded witness statement—it must produce them. If not, *amicus* does not contend the FBI should be required to search additional sources.

defendants' reliance on the plaintiff's purpose during their search unreasonably limited the number of responsive documents . . . ."); *Nicholls v. U.S. Off. of Pers. Mgmt.*, 863 F. Supp. 2d 4, 10–11 (D.D.C. 2012) (rejecting agency effort to limit request for "appeals" to exclude records of adjudications and reconsiderations not formally dubbed "appeals" by the agency). The weight of authority therefore is overwhelmingly against the FBI's narrow interpretation of Brown's request.

As it did in the briefing for summary affirmance, the FBI implies that Brown's or *amicus*'s inability to identify specific records that were impermissibly withheld by the FBI is grounds to affirm. *See* Answer Br. 23–25. It is not. There may or may not be unproduced, responsive audio recordings, or written statements, or notes from conversations other than witness interviews, or any number of other documents. The question is not whether any such records actually exist, "but rather whether the government's search for responsive documents was adequate." *Weisberg v. U.S. Dep't of Just.*, 705 F.2d 1344, 1351 (D.C. Cir. 1983) (quotation marks omitted); *see also Kowalczyk*, 73 F.3d at 388 ("[T]he issue here is not whether there might be any further documents."). If the FBI's search turned up such documents and the FBI withheld them because they did not constitute "interviews," it must produce them. If not, then the FBI could say as much in a declaration and moot this issue. That the FBI has not done so

8

is itself telling.  *See Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990) ("At the very least, [the FBI] was required to explain in its affidavit that no other record system was likely to produce responsive documents.").[3]

## II.  The District Court and the FBI Failed to Properly Apply the Foreseeable-Harm Requirement

Neither the district court nor the FBI discharged its duty to examine whether disclosure of an otherwise exempt record would result in foreseeable harm to an interest protected by the statute.  In fact, the district court did not address this issue *at all*.  And while the FBI mentioned it in passing below, its declaration falls short of providing the sequential analysis required by this Court.  That is particularly true with respect to Exemption 7(D), on which the FBI relied to withhold much of the most critical information Brown sought in his request.  These errors demand either vacatur or reversal.

### A.  The District Court Failed to Address the Foreseeable-Harm Requirement

The FBI is unable to identify a single sentence in the district court's opinion discussing the foreseeable-harm requirement.  *See generally*

---

[3] The FBI claims ignorance prior to this lawsuit that Brown objected to the narrow scope of its search.  *See* Answer Br. 24–25.  That is belied by the record, *see Amicus* Br. 23–24, but is immaterial in any event.  Brown was under no obligation to restate the plain terms of his request.

JA459–96. That is because there is none. The district court never so much as mentioned the requirement, and when pressed by Brown on reconsideration, the court observed simply: "[I]f I was wrong, I guess the Court of Appeals will tell me." JA537. Respectfully, the district court was wrong, and this Court should tell it as much.

Instead, the FBI cites a number of passages in which the district court discussed the *elements of the exemptions*, *see* Answer Br. 46–47, which sometimes require an assessment of the likely effect disclosure may have on privacy, national security, or law enforcement. For example, the FBI cites to the district court's discussion of the potential harm to national security from disclosure, *see* Answer Br. 46 (citing JA473), but a threat to national security is an element of Exemption 1 under Executive Order 13526, *see Elec. Priv. Info. Ctr. v. Dep't of Justice*, 296 F. Supp. 3d 109, 124–25 (D.D.C. 2017). With respect to the district court's discussion of privacy interests under Exemption 7(C), JA481, the exemption itself permits withholding of records only if their disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(7)(C). Indeed, the principal case on which the district court relied in determining that Exemption 7(C) could apply was decided five years before the FOIA Improvement Act of 2016 added the foreseeable-harm requirement. *See Schoenman v. FBI*, 763 F. Supp. 2d 173

(D.D.C. 2011), cited at JA481–82.  For Exemption 7(E), the FBI cites a passage in which the district court analyzed whether disclosure of the law enforcement techniques "might create a risk of circumvention of the law," JA491–92 (quotation marks omitted), but again, that is an element of Exemption 7(E) itself, *see* 5 U.S.C. § 552(b)(7)(E), not an articulation or analysis of the foreseeable-harm requirement.

The same is true for the portion of the district court's decision the FBI cites regarding Exemption 7(D).  *See* Answer Br. 46–47 (citing JA487–88). That passage addressed whether the sources of the information withheld received an implied assurance of confidentiality, an element under Exemption 7(D).  JA487–88; *see also* 5 U.S.C. § 552(b)(7)(D).  But the district court expressly rejected any need to consider the specific information being withheld, citing a pre-2016 case stating that "the availability of Exemption 7(D) depends not upon the factual contents of the document sought, but upon whether the source was confidential and the information was compiled during a criminal investigation."  JA489 (quotation marks omitted). As even the FBI admits, the district court's analysis in this section was not addressed at the issue of foreseeable harm.  *See* Answer Br. 29–30.

As *amicus* argued in its opening brief—and the FBI does not dispute—the foreseeable-harm requirement is an "independent and meaningful burden" that must be satisfied before responsive records may be

withheld, and "the government's successful invocation of a FOIA exemption cannot justify its withholding of exempt material without a more particularized inquiry into what sort of foreseeable harm would result from the material's release." *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 369 & n.2 (D.C. Cir. 2021) (citation omitted); *see also NPR v. DHS*, 2022 WL 4534730, at *8 (D.D.C. Sept. 28, 2022) ("[T]he agency [must] articulate why *this* disclosure would *be particularly* harmful."). In other words, a document does not satisfy the foreseeable-harm requirement just because it qualifies for a statutory exemption. Discussion of the elements of the exemptions therefore does not suffice for the foreseeable-harm requirement, yet that is all the district court offered.

The FBI disclaims any responsibility for the district court's oversight, urging that its declarant's analysis of foreseeable harm was integrated into other paragraphs discussing the specific elements of the exemptions. *See* Answer Br. 43–44. But a court cannot be expected to sift through dozens of paragraphs of testimony in order to uncover the evidence purportedly relating to foreseeable harm: "[J]udges are not like pigs, hunting for truffles buried in the record." *Murthy v. Missouri*, 603 U.S. 43, 67 n.7 (2024) (alteration and quotation marks omitted). Indeed, the FBI does not deny that it included virtually no argument on the foreseeable-harm element in its motion for summary judgment. *See* D.C. Dkt.23-2, at 1–2; *see*

12

*also Shteynlyuger v. Ctrs. For Medicare & Medicaid Servs.*, 698 F. Supp. 3d 82, 124 (D.D.C. 2023) (rejecting invocation of exemption where the government "ma[de] no argument whatsoever that it has satisfied the foreseeable-harm requirement"). It is the agency's "burden to submit evidence *and offer reasoning based on that evidence*" establishing foreseeable harm. *Leopold v. Dep't of Justice*, 94 F.4th 33, 38 (D.C. Cir. 2024) (emphasis added). The FBI did not discharge that obligation.

Moreover, just like the district court, the statements the FBI points to in its declaration in fact are discussions of the statutory elements of each exemption, not separate analyses of the foreseeable harm issue. *See* Answer Br. 44–45. For example, the FBI points to sections in the declaration discussing how disclosure might "unfairly subject [the affected parties] to suspicion" under Exemptions 6 and 7(C). *Id.* But again, those exemptions each call upon the agency to evaluate whether disclosure would work an "unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(6), (7)(C), and pre-2016 decisions confirm that those exemptions may be triggered only where disclosure would "subject[] these individuals to unsolicited scrutiny and harassment," *Schoenman*, 763 F. Supp. 2d at 198. The FBI's declaration therefore appears to do little more than discuss the elements of each exemption and then state at the end in summary terms that all of

the same analysis satisfies the foreseeable-harm requirement. FOIA requires more. *See Reps. Comm. for Freedom of the Press*, 3 F.4th at 369 & n.2.

The FBI attempts distinguish the declaration here from those submitted in *Leopold*, which this Court held insufficient to satisfy the foreseeable-harm standard. Answer Br. 47 (citing *Leopold*, 94 F.4th at 37–38). In doing so, however, the FBI overlooks the reasoning underlying the Court's decision in *Leopold*:

> The Department's declarations fold a perfunctory assertion of foreseeable harm into their application of Exemption 8 to the entirety of the Report. This appears to ignore that the agency must specifically and thoughtfully consider foreseeable harm from disclosure of *otherwise-exempt* information.

*Leopold*, 94 F.4th at 38 (quotation marks omitted). That is precisely what the FBI has attempted to do here: "fold a perfunctory assertion of foreseeable harm" into the analysis of the elements of the exemption elements, rather than conduct the "sequential inquiry" called for by FOIA. *Id.*

In any event, regardless whether the FBI's declaration adequately addresses foreseeable harm, the district court did not. And the FBI does not dispute that the district court had an independent obligation to assess the foreseeable-harm requirement and "explain its conclusion" as to that issue. *Leopold*, 94 F.4th at 38; *Wash. Post Co. v. Special Inspector Gen. for*

14

*Afg. Reconstr.*, 2021 WL 4502106, at \*22 (D.D.C. Sept. 30, 2021). The district court's failure to even acknowledge the foreseeable-harm requirement—much less apply it—even after Brown brought the requirement specifically to the court's attention on reconsideration is alone grounds for vacatur.

### B. The FBI Did Not Carry Its Burden to Prove That Releasing Information Subject to Exemption 7(D) Would Cause Foreseeable Harm

With respect to Exemption 7(D), there is insufficient evidence in the record to support the FBI's claim that it accounted for and satisfied the foreseeable-harm requirement. The declaration the FBI submitted—which does not even include the term "foreseeable harm" in the discussion under Exemption 7(D)—is not enough.

At the outset, the FBI makes little effort to defend the district court's conclusion, based on pre-2016 authority, that application of Exemption 7(D) does not depend "upon the factual contents of the document sought." JA489. The FBI urges that the district court was addressing in that passage only whether the elements of Exemption 7(D) were satisfied, and not whether there was a risk for foreseeable harm. *See* Answer Br. 29. That is precisely the point: The district court did not undertake any analysis of foreseeable harm separate from the elements of Exemption 7(D), *see supra*

__, and therefore applied the wrong legal standard in determining whether the exemption could properly be applied.

Nor does the FBI defend its argument below that the mere "fact of disclosure" of confidential information is sufficient. D.C. Dkt. 35, at 5. That is for good reason, as this Court has squarely rejected such a contention. *See Reps. Comm. for Freedom of the Press*, 3 F.4th at 369 n.2. While "establishing [confidentiality]" might "go a long way to show the risk of foreseeable harm," the agency still bears the burden to "provide a non-generalized explanation on the foreseeable harm that would result from disclosure." *Reps. Comm. for Freedom of the Press v. CBP*, 567 F. Supp. 3d 97, 124 (D.D.C. 2021).

Instead, the FBI relies entirely on the declaration it submitted in support of its motion for summary judgment. But the discussion regarding Exemption 7(D) in the FBI's supporting declaration, like the district court's corresponding analysis, concerns whether the sources provided information under an implied assurance of confidentiality, JA85–86, not whether disclosure would lead to foreseeable harm to an interest protected by an exemption. The arguments the FBI offers now about foreseeable harm are simply an after-the-fact effort to piece together such evidence from statements intended to address other elements of Exemption 7(D).

As noted above, however, the foreseeable-harm requirement is an "independent" element of a FOIA exemption that must be separately considered. *Reps. Comm. for Freedom of the Press*, 3 F.4th at 369 (citation omitted).

In any event, the evidence the FBI cites on appeal does not satisfy its burden to "articulate why *this* disclosure would *be particularly* harmful," *NPR*, 2022 WL 4534730, at *8, and instead simply repeats generic, non-specific arguments about the importance of protecting confidential sources. For example, the FBI cites testimony asserting that release of records would "forever eliminate that source as a means of obtaining information" and could have a "chilling effect on the activities and cooperation of other sources," including because the FBI relies on sources who "furnish information only with the understanding that their identities and the information provided will not be divulged" to third parties. Answer Br. 31–32 (quotation marks omitted) (quoting JA84–85). That is the exact rationale—right down to the letter—offered by the FBI in numerous other cases involving Exemption 7(D) but arising under entirely different facts. *See* Decl. of Michael G. Seidel ¶¶ 116–17, *Clemente v. FBI*, No. 20-CV-1527 (D.D.C. Aug. 31, 2022), ECF No. 34-4 ("*Clemente* Decl."); Second Decl. of Michael G. Seidel ¶¶ 82–83, *Boundaoui v. FBI*, No. 17-CV-4782 (N.D. Ill. Mar. 3, 2022), ECF No. 186 ("*Boundaoui* Decl."); Fourth Decl. of Michael

G. Seidel ¶¶ 142–43, *Huddleston v. FBI*, No. 20-CV-447 (E.D. Tex. Dec. 16, 2021), ECF No. 39-1 ("*Huddleston* Decl."); Decl. of Michael G. Seidel ¶¶ 85–86, *Radar Online LLC v. FBI*, No. 17-CV-3956 (S.D.N.Y. Oct. 29, 2021), ECF No. 40 ("*Radar* Decl."); Decl. of Michael G. Seidel ¶¶ 135–36, *Wright v. FBI*, No. 18-CV-687 (D.D.C. June 11, 2021), ECF No. 33-3 ("*Wright* Decl."); Decl. of Michael G. Seidel ¶¶ 52–53, *Guarascio v. FBI*, No. 18-CV-2791 (D.D.C. May 10, 2021), ECF No. 42-3 ("*Guarascio* Decl.").

The same is true for the FBI's invocation of the purportedly "singular" nature of the sources' knowledge. *See* Answer Br. 33. The FBI routinely makes the same argument in other cases where it invokes Exemption 7(D). *Compare* JA86 ("These individuals provided specific, detailed information that is singular in nature—i.e., only a few individuals would be privy to such information."), *with Clemente* Decl. ¶ 119 ("[T]hese individuals provided specific, detailed information that is singular in nature, i.e., only a few individuals would be privy to such information."), *and Boundaoui* Decl. ¶ 89 ("[T]he individuals provided specific, detailed information that is singular in nature—*i.e.*, only a few individuals would be privy to such information."), *and Huddleston* Decl. ¶ 147 ("Release of a source's identity and any singular information they provided may lead to the revelation of the source's identity . . . ."), *and Radar* Decl. ¶ 88 ("[T]hese third-party sources provided specific, detailed information that

is singular in nature—*i.e.*, only a few individuals would be privy to such information."), *and Wright* Decl. ¶ 140 ("Release of a source's identity or any singular information he or she provided may lead to the revelation of the source's identity . . . ."). The FBI's purportedly particularized allegation—that "releasing singular information provided by confidential sources that would reveal their identities would cause other sources to refuse to cooperate with the FBI or to hold back information out of fear that they too could be identified," Answer Br. 34—is therefore nothing more than the same generic rationale the FBI appears to offer in numerous FOIA cases, *see Reporters Comm. for Freedom of the Press*, 3 F.4th at 369 (agency must articulate a "link between the *specified* harm and *specific* information contained in the material withheld" (emphases added)).

To the extent the FBI attempted to offer any analyses unique to the circumstances here, its efforts fell well short. For example, the FBI cites declaration testimony that witnesses "provided unique perspectives based on their differing locations in or near the building where the shooting occurred and their specific actions during the shooting." JA86. But that could be said of any source of any information in any circumstance—every source's account will be at least somewhat unique based on their particular circumstances or vantage point—and the foreseeable-harm require-

ment is not met where "[t]he harm that [the agency] identifies . . . under-girds the [exemption] in every case." *Reps. Comm. for Freedom of the Press*, 567 F. Supp. 3d at 115. That the FBI offers this same rationale essentially every time Exemption 7(D) is implicated proves the point—if it really were the case that a witness's purportedly "unique perspective[]" about a given incident or issue is sufficient to withhold all of the information provided by that witness, then the foreseeable-harm requirement would effectively have no application to Exemption 7(D).[4]

What is missing from the FBI's arguments is evidence about why this *specific* information from these *specific* witnesses would expose them to foreseeable harm, particularly in view of the information already made public about the shooting. There were approximately 60–70 people present at the time of the shooting. JA202. If a witness reported seeing the shooters walk into the lobby of the building, how would that information compromise the identity or safety of the witness? What about if a witness reported the color of one of the shooter's clothing? Or the door through which the shooters entered? Or one of the shooters' hairstyle? The FBI

---

[4] The FBI points to its partial release of records as purported evidence that its rationales do not necessarily apply to all information provided by third-party sources under an implied assurance of confidentiality. *See* Answer Br. 35. But the FBI does not make any effort to distinguish the information disclosed from the information withheld, nor justify why disclosure of the latter would present a different risk of foreseeable harm.

does not explain how any of that kind of information could be traced back to any particular source—much less expose that source to foreseeable harm—and generic assertions about the "singularity" of the information provided are not sufficient. *See Reps. Comm. for Freedom of the Press*, 3 F.4th at 369, 372 ("mere 'speculative or abstract fears'" and "generalized assertions" are insufficient).

The FBI also overlooks this Court's instruction (cited by *amicus*, *see Amicus* Br. 39) that "the foreseeability requirement means that agencies must concretely explain how disclosure 'would'—not 'could'"—result in foreseeable harm. *Reps. Comm. for Freedom of the Press*, 3 F.4th at 369–70; *see also* 5 U.S.C. § 552(a)(8) (withholding allowed only if "the agency reasonably foresees that disclosure *would* harm an interest protected by an exemption" (emphasis added)). The portion of the FBI's supporting declaration discussing Exemption 7(D) repeatedly refers to the *possibility* of adverse effects from disclosure. *See* JA84–86 ("Information provided by these sources is often singular in nature, and if released, *could* reveal their identities."; "Such a result undermines one of the FBI's most important means of collecting information and *could* thereby severely hamper law enforcement efforts . . . ."; "[L]ike-minded individuals or others sympathetic to the San Bernardino suspects *could* seek to deter a source's coop-

eration with law enforcement through reprisal."; "The FBI determined disclosure of the identities of these sources and the information they provided *could* subject these individuals, as well as their families, to retaliation or backlash . . . ." (emphases added)).  But under this Court's precedent, that is not sufficient.

\* \* \*

The FOIA Improvement Act of 2016 imposed a new, discrete requirement for the invocation of most exemptions:  Material may be withheld only if the agency "reasonably foresees that disclosure would harm an interest protected by an exemption."  5 U.S.C. § 552(a)(8)(A)(i)(I).  That requirement cannot be satisfied simply by referring to the underlying elements of an exemption, "fold[ing]" the harm analysis into the underlying exemption analysis, or rotely repeating the same generic assertions of harm that could be raised in any case.

The evidence does not support entry of summary judgment in favor of the FBI.  Brown does not seek release of the identity of any confidential source, and the FBI's contention that the only portions withheld under Exemption 7(D) "are those that would reveal witnesses' identities" is unsupported by the generic statements offered in the FBI's declaration.  An-

swer Br. 35. The FBI should be directed to re-review the withheld materials using a proper standard of foreseeable harm and to support any withholding under Exemption 7(D) with a new declaration after that re-review.

## CONCLUSION

For the foregoing reasons, the district court's grant of summary judgment to the FBI should be vacated in part and reversed in part, and the case should be remanded for further proceedings.

Respectfully submitted,

Chloe S. Fife
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000

/s/ Joshua M. Wesneski
Zachary D. Tripp
Joshua M. Wesneski
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
(202) 682-7000
joshua.wesneski@weil.com

December 16, 2024

## CERTIFICATE OF COMPLIANCE

The undersigned counsel of record certifies pursuant to Fed. R. App. P. 32(g) that the Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(ii) because, excluding the parts of the Brief exempted by Fed. R. App. P. 32(f), this document contains 5,152 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Century Schoolbook font in 14 point size.

*/s/ Joshua M. Wesneski*
Joshua M. Wesneski
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
(202) 682-7000
joshua.wesneski@weil.com

December 16, 2024